UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE NELSON, Ed.D. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 15-cv-08932 |
| | ) |
| BOARD OF EDUCATION, COUNTRY | ) Judge Sharon Johnson Coleman |
| CLUB HILLS SCHOOL DISTRICT 160, | ) |
| SANDRA THOMAS, individually, and as | ) |
| SUPERINTENDENT OF COUNTRY | ) |
| CLUB HILLS SCHOOL DISTRICT 160, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joyce Nelson ("Nelson") filed a three-count First Amended Complaint [35], alleging retaliation for exercising her First Amendment free speech rights, breach of contract against the Country Club Hills District 160 Board of Education ("Board"), and defamation *per se* against Superintendent Sandra Thomas ("Thomas"). Defendants filed a motion for summary judgment on all counts [83]. Nelson filed a cross-motion for partial summary judgment on Counts II for breach of contract and III for defamation [85]. For the reasons stated herein, the Court grants summary judgment in favor of defendants and denies plaintiff's summary judgment.

**Background**

The following facts are undisputed. Plaintiff Joyce Nelson was employed by the Country Club Hills District 160 Board of Education pursuant to a one-year administrative employment contract to serve in the administrative position as the principal at Meadowview School for the academic period from August 1, 2014 through June 30, 2015. (Dkt. 93 at 7; Dkt. 98 at 11). Defendant Sandra Thomas was the Superintendent of the Country Club Hills School District 160,

1

during the material time period at issue here. (Dkt. 93 at 3).

On February 24, 2015, Thomas completed Nelson's professional evaluation, rating her "excellent" in three categories: "Leading and Managing Systems" (standard 2); "Building and Maintaining Collaborative Relationships (standard 4); and "Leading with Integrity and Professionalism" (standard 5). (Dkt. 93 at 19).

On March 17, 2015, Nelson called the Country Club Hills police because Dawn Harris, a parent of a Meadowview School student, became disruptive on school grounds. (Dkt. 98 at 12). During the incident, Nelson instructed teachers to escort their students into classrooms and lock the doors. (Dkt. 98 at 13). Nelson identified herself to Harris as the school principal. (Dkt. 98 at 14). Nelson and two other school employees (Steve Morton and Brenda Richardson) each gave a statement to the police. (Dkt. 98 at 15). Harris was charged with aggravated assault, disorderly conduct, and criminal trespass to state supported land. (Dkt. 98 at 19). On August 14, 2015, Harris pleaded guilty to disorderly conduct and the Cook County State's Attorney dismissed the other charges. (Dkt. 98 at 23).

On May 4, 2015, Thomas notified Harris by certified letter that the School District was considering formally prohibiting her from being present anywhere on any School District property and/or entering any school buildings. (Dkt. 100 at 11). Following the letter, Thomas and Harris had a one-on-one meeting on May 14, 2015. (Dkt. 100 at 12). Initially, Thomas proposed that Nelson attend the meeting with Thomas and Harris to discuss the School District's response to Harris' concerns about the bullying of her child. (Dkt. 100 at 17-19). Nelson contacted Attorney Brian Schwartz, General Counsel for the Illinois Principal Association, seeking guidance about the proposed meeting and her discomfort with being present. (Dkt. 100 at 16-17). Schwartz thought it would be a good idea to have a telephone conference or to have a police or district resource officer present. (Dkt. 100 at 17). Nelson refused to attend the meeting, which took place on May 28, 2015,

with two other members of the Board present. (Dkt. 100 at 19). On June 5, 2015, Thomas sent Nelson a disciplinary letter for her refusal to participate in a parent conference with Harris. (Dkt. 100 at 25).

On Tuesday June 9, 2015, the police responded to a report of a dispute erupted between Harris and Nelson at Meadowview School. (Dkt. 100 at 27). The police report described the incident as a "communication mishap," and no charges were filed. (Dkt. 96-4, Ex. KK). Immediately following this incident, Nelson received medical attention from the School District medical staff for elevated blood pressure. (Dkt. 100 at 28; Dkt. 96-4, Ex. LL). Also on this date, Thomas sent Nelson a one-year administrative employment contract for the academic period August 1, 2015 through June 30, 2016, with instructions for her to sign and return it the following day. (Dkt. 93 at 8; Dkt. 100 at 30). Having initially sent Nelson the incorrect contract, Thomas sent Nelson a corrected contract by email at 6:12 p.m.[1] (Dkt. 100 at 32). In the email Thomas admonished Nelson that the failure to return the signed contract by the end of the day on June 10, 2015, "will result in a reevaluation of [her] continuing employment with the District." (*Id.*)

Nelson did not sign the employment contract to serve as a principal for Country Club Hills School District 160 for the 2015-2016 academic year. (Dkt. 98 at 29; Dkt. 86-1, Ex. C). Nelson did not inform Thomas of any reason for her failure to sign the contract, though she later stated there was a misstatement of the number of vacation days. (Dkt. 98 at 30). On June 15, 2015, Thomas emailed Nelson to advise her that "As of 5:00 p.m. today, June 15, 2015, I have not received your signed employment contract. As a result, I will be evaluating your current position as Meadowview building principal. Please make an appointment with my secretary to discuss your continued employment in District 160." (Dkt. 100 at 34). On June 16, 2015, Nelson responded, requesting a meeting on Thursday, June 18, 2015. (Dkt. 100 at 35).

---

[1] The first contract sent was for a different employee.

The Board meeting agenda and minutes from June 16, 2015, document that the Board discussed administrative contracts for ten individuals, including Nelson. (Dkt. 98 at 35; Dkt. 84-13, Ex. M). The meeting agenda indicates that the Board anticipated approving Nelson's administrative contract. (Dkt. 86-3, Ex. G). The minutes reflect that Nelson's contract to serve as principal at Meadowview was withdrawn by the Board and the Board approved reassigning her to Southwood School as assistant principal. (Dkt. 98 at 36-37; Dkt. 84-13, Ex. M). The Board notified Nelson that they were reassigning her to the position of assistant principal for 2015-2016 school year. (Dkt. 98 at 31). Between June 9, 2015, and June 16, 2015, the Board anticipated renewing and approving the one-year administrative employment contract offered to Nelson for the 2015-2016 school year. (Dkt. 93 at 10). On or about June 16, 2015, the Board's attorneys advised the Board that it could withdraw Nelson's contract tendered on June 9, 2015, and reassign her to the position of assistant principal. (Dkt. 93 at 13). On June 17, 2015, Thomas provided Nelson with a letter informing her of the Board's decision to reassign her to the position of assistant principal at Southwood Middle School with the same salary, terms, and conditions of employment contained in her 2014-2015 administrative employment contract. (Dkt. 93 at 17).

Paragraph 6 of Nelson's 2014-2015 employment contract, requires each party to provide notice no later than April 1 of the contract year [2015] if the contract was not going to be renewed at the end of its term. (Dkt. 93 at 20). The director of human resources sent Nelson a letter dated July 25, 2015, to confirm Nelson's return and that her assignment was as Assistant Principal of Southwood Middle School beginning August 3, 2015. (Dkt. 98 at 32). The Board's official website was updated on or about August 1, 2015, to reflect that "Dr. Joyce Nelson" was the Assistant Principal of Southwood Middle School. (Dkt. 93 at 26). Nelson did not report to Southwood

4

Middle School to begin her position as Assistant Principal for the 2015-2016 school year. (Dkt. 98 at 33). The August 11, 2015, Board meeting agenda and minutes indicate that the Board was to discuss in a closed session that Nelson had not signed her contract or reported to work. (Dkt. 98 at 38). Nelson has not received any salary or compensation or benefits from employment with the Board since June 30, 2015. (Dkt. 93 at 34). Nelson was seeking employment outside Country Club Hills School District 160 as of May 2015. (Dkt. 98 at 34).

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). On cross-motions, summary judgment is appropriate only when evidence as a whole shows there is no genuine dispute as to any material fact, *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011), regardless of which motion the evidence is attached. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

**Discussion**

*1. Count I: First Amendment Retaliation*

Defendants move for summary judgment on all three counts of the First Amended Complaint. In Count I, Nelson alleges unlawful retaliation in violation of 42 U.S.C. §1983 for

exercising her right of free speech as secured by the First Amendment. Nelson alleges that the Board and Thomas retaliated against her for reporting the actions of Meadowview parent, Dawn Harris, to the police by demanding that she meet with "her attacker," reprimanding her for failing to meet with Harris, and rescinding the Board's offer to continue her employment as principal of Meadowview school. Defendants argue that Nelson made the police report, not as a private citizen, but as a public employee while doing her job. Thus, according to defendants, the police report is not protected speech.

As a public school principal, Nelson was a public employee, and as such this Court must first determine whether the speech that allegedly motivated the employer's adverse action was protected by the Constitution. *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013); *Chaklos v. Stevens,* 560 F.3d 705, 711–12 (7th Cir. 2009). Next, the Court considers whether the allegedly retaliatory activity was motivated by the constitutionally protected speech. *Houskins v. Sheahan,* 549 F.3d 480, 489-90 (7th Cir. 2008). If the plaintiff is able to establish those first two requirements, then the defendant may still prevail if it would have taken the same action irrespective of the plaintiff's speech. *Id.*

Whether the Constitution protects particular speech is a question of law appropriate for resolution by summary judgment. *See Spiegla v. Hull,* 481 F.3d 961, 965 (7th Cir. 2007). For a public employee to successfully establish raise a First Amendment claim for her employer's restriction of her speech, the speech must be in her capacity as a private citizen and not as an employee. *Renken v. Gregory,* 541 F.3d 769, 773 (7th Cir.2008). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Whether an employee was speaking pursuant to her official duties is a practical inquiry that is not limited to her official job

6

description. *Vose v. Kliment,* 506 F.3d 565, 569 (7th Cir. 2007).

Here, Nelson argues that her reports to the police and subsequent offer of testimony stemming from the March 17, 2015, incident were statements made as a private citizen. The record demonstrates otherwise. The police report shows that Nelson was providing the report as a representative of Meadowview School. Dkt. 84-3 at pp. 69-70. The report states that Nelson, the school principal, informed the officer that a parent came to the school and caused a disturbance. The parent, Harris, confronted Nelson because she felt that the school was not taking seriously the bullying of Harris' child at the school. *Id.* While the report is not made in the ordinary execution of her job, maintaining order and safety on school property from an administrative standpoint would undoubtedly be within Nelson's purview as principal.

The misdemeanor complaints filed in the Circuit Court of Cook County against Harris stemming from the March 17, 2015, incident at the school also support the conclusion that Nelson was speaking in her capacity as principal of Meadowview and not as a private citizen. The complaint for disorderly conduct for which Harris ultimately pleaded guilty, states that Harris:

> knowingly entered on the property of Meadowview School District 160 4701 W. 179 Street Country Club Hills, Ill. Cook County in that said defendant entered into the building and caused a disturbance by chasing a student in the hallway in which it caused alarm to school staff and the students in the building.

Dkt. 94-3, Ex. BB. It is signed by Nelson and provides the address of the school as the complainant's address. *Id.* Similarly, the complaint for criminal trespass to state supported land states that Harris:

> knowingly entered… Meadowview School… after receiving prior to such entry, notice from School Principal, Dr. Joyce Nelson a representative of the School, that such entry was forbidden, and thereby interfered with the Principal's lawful use of such building.

Dkt. 94-3, Ex. CC. The third complaint from the incident, for aggravated assault, likewise notes Nelson as principal of Meadowview. Dkt. 94-3, Ex. DD. Thus, this Court finds the record

7

demonstrates that Nelson was not speaking as a private citizen when reporting the incident to the police.

Even if Nelson were speaking as a private citizen, the content of the statement does not involve a matter of public concern. *See Houskins*, 549 F.3d at 491. "[T]he 'public concern' element must relate to a community concern and is not satisfied by 'merely a personal grievance of interest only to the employee.'" *Id.* at 490 (quoting *Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir. 2004)). "The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the plaintiff's speech was to raise issues of public concern." *Boyce v. Andrew*, 501 F.3d 1333, 1344 (11th Cir. 2007); *Houskins*, 549 F.3d at 492. Clearly, Nelson was filing the police report not to raise an issue of public concern, but file a grievance for specific conduct directed at Nelson in her official capacity and at her students.

The situation here is similar to that in Houskins, where the plaintiff filed a police report after being assaulted by a colleague. *Houskins*, 549 F.3d at 492. There the Court found that, even if the plaintiff made the report speaking as a private citizen rather than a public employee, it was not a matter of public concern and was not constitutionally protected speech. *Id.* Thus, this Court finds that Nelson cannot establish a prima facie case for First Amendment retaliation since her speech was not constitutionally protected.

*2. Count II: Breach of Contract*

In Count II, Nelson alleges that the Board breached her employment contract by failing to inform her by April 1, 2015, that they were not going to renew her contract as principal of Meadowview School. Nelson asserts that she is entitled to judgment as a matter of law on this count because the undisputed facts show that the Board rescinded the renewal of her contract in June and demoted her to assistant principal at Southwood Middle School in violation of the Illinois School Code, 105 Ill. Comp. Stat. Ann. 5/10-23.8b. The Board argues that it is entitled to judgment in its

8

favor because Nelson failed to sign her employment contract to remain principal within the time requested, and the Board was within its rights to reassign her to another open position at the same salary.

Under Illinois law, the elements of a breach of contract cause of action are a valid and enforceable contract, breach by the defendant, resulting in damages to the plaintiff. *See e.g., Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007). Here, neither party disputes that there was a valid and enforceable contract prior to June 2015. Thus, the only issues for this Court are whether the Board breached the contract and whether Nelson incurred damages from a breach.

Nelson claims that the Board violated the following provision in her contract for the 2014-2015 school year:

> In the event the Board or the Administrator decides not to renew this agreement at the end of its term, notice of such intention shall be given by no later than April 1, of the contract year. Unless terminated earlier under paragraph 14 below, this Agreement will terminate effective at the close of the day on June 30 of the contract year identified in paragraph 1 above.

The Board does not dispute that it did not provide Nelson with notice of its intent to terminate her contract prior to April 1, 2015. The Board argues, and Nelson does not contradict, that the Board provided her with an employment contract for the 2015-2016 school year and that Nelson did not sign the contract. The record demonstrates that it was only after Nelson refused to sign the contract that the Board chose instead to reassign her to the position of assistant principal at Southwood Middle School with the same compensation. When the Board sent her a contract for the assistant principal position Nelson also did not sign. Further, Nelson did not provide the Board with any notice of her intent not to continue her employment as an Administrator with the Board.

The Illinois School Code provides that,

> Upon non-renewal of a principal's or assistant principal's administrative contract, the principal or assistant principal shall be reclassified pursuant to this Section. No principal or assistant principal may be reclassified by demotion or reduction in rank from one position within a school district to another for which a lower salary is paid

without written notice from the board of the proposed reclassification by April 1 of the year in which the contract expires…

105 Ill. Comp. Stat. Ann. 5/10-23.8b. As interpreted by the Seventh Circuit this section "makes employment as a principal employment at will." *Lyznicki v. Bd. of Educ., Sch. Dist. 167, Cook Cty., Ill.*, 707 F.2d 949, 952 (7th Cir. 1983). The School Code's language is clear and, therefore, this Court must apply it as written. *Hesbol v. Bd. of Educ. of Laraway Cmty. Consol. Sch. Dist. 70-C*, 14 F. Supp. 3d 1101, 1105 (N.D. Ill. 2014) (Kendall, J.) (citing *Bd. of Educ., Proviso Twp. Sch. Dist. No. 209 v. Jackson*, 401 Ill.App.3d 24, 339 Ill. Dec. 665, 927 N.E.2d 206, 213–14 (Ill. App. Ct.2010). "The only reclassifications the statute is concerned with are those that involve a reduction in salary[.]" *Lyznicki*, 707 F.2d at 952. Here, it is undisputed that the Board reassigned Nelson to an administrator position at the same salary and thus it complied with the School Code. Accordingly, this Court finds that Nelson fails to demonstrate a material issue of fact on this score and that the Board is entitled to judgment as a matter of law on Count II.

*3. Count III: Defamation Per Se*

In Count III, Nelson alleges defamation *per se* against Thomas, claiming that Thomas falsely stated: "Dr. Nelson had abandoned her position as Assistant Principal of Southwood Middle School in School District 160 for the academic year 2015-2016." Dkt. 44, First Amend. Compl. at ¶ 56. Nelson further claims the statement damaged her reputation and made it difficult for her to obtain employment as a high-level school administrator. *Id.* at ¶ 62. To prove defamation, under Illinois law Nelson must show that Thomas made a false statement about her, that there was an unprivileged publication to a third party with fault by Thomas, and that the publication damaged Nelson. *See Harrison v. Addington*, 2011 IL App (3d) 100810, ¶ 39, 955 N.E.2d 700, 706 (1st Dist. 2011) (citing *Vickers v. Abbott Laboratories,* 308 Ill. App. 3d 393, 400, 241 Ill. Dec. 698, 719 N.E.2d 1101 (1999)).

"In Illinois, there are five categories of statements that are considered defamatory *per se:* (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a

loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Solaia Technology, LLC v. Specialty Publishing Co.,* 221 Ill. 2d 558, 579–80, 304 Ill. Dec. 369, 852 N.E. 2d 825 (2006).

Here, there is conflicting evidence that Thomas even made the alleged statement. Nevertheless, this Court finds no actionable defamation *per se* because the statement, even if made, does not suggest that Nelson is *unable* to perform her job or *lacks integrity* in performing her job. *See Harrison*, 955 N.E.2d at 706. The statement also is capable of an innocent construction. "It is well settled that, even if an alleged statement falls into one of the categories of words that are defamatory *per se,* it will not be actionable *per se* if it is reasonably capable of an innocent construction." *Green v. Rogers,* 234 Ill. 2d 478, 499, 334 Ill. Dec. 624, 917 N.E. 2d 450 (2009). The word "abandon" has five definitions in Merriam-Webster, none of which are purely negative in connotation. *See* Merriam-Webster (2017 Ed.), merriam-webster.com, http://merriam-webster.com/dictionary/abandon (last visited Nov. 7, 2009). The statement can simply mean that she left the position. Furthermore, "[t]ruth is an absolute defense to defamation; true statements cannot support a claim of defamation." *Hnilica v. Rizza Chevrolet, Inc.,* 384 Ill. App. 3d 94, 97, 323 Ill. Dec. 454, 893 N.E. 2d 928 (2008). Despite Nelson's claim that the statement is false, this Court finds that based on the undisputed evidence Nelson failed to sign a new employment contract and did not report to work the statement is technically true. Her assertion that she never accepted the position of assistant principal does not render this statement false. She never notified the Board that she did not intend to sign a new contract. Lastly, Nelson appears to believe that simply being labeled "assistant principal" is by itself impugning her professional character. This Court disagrees with the assessment that on its face the title "assistant principal" is insulting. Accordingly, this Court finds no genuine

11

issue of material fact on Nelson's defamation claim and Thomas is entitled to judgment as a matter of law on Count III.

**Conclusion**

Based on the foregoing discussion, this Court finds that the defendants, Country Club Hills District 160 School Board and Sandra Thomas, are entitled to judgment as a matter of law in their favor on all three counts of the First Amended Complaint. This Court grants defendants' Motion for Summary Judgment [83] and denies plaintiff's partial motion for summary judgment on Counts II and III [85].

IT IS SO ORDERED.

Date: November 13, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge